## Myles v. Harris, et al.

(Decided February 20, 1914.)

### Appeal from Graves Circuit Court.

Contracts—Broker—Action for Commissions—Verdict— Evidence. —In an action by a broker to recover commissions alleged to be due under a contract of employment by which he was to render certain services in connection with the purchase of tobacco, evidence examined and held to sustain a finding in favor of the plaintiff.

STANFIELD & STANFIELD for appellant.

ROBBINS & THOMAS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Alleging that the defendants, J. N. Harris, S. R. Douthitt, G. R. Allen and W. H. Houseman, were partners and had employed him to perform certain services in connection with the purchase of 1,200 hogsheads of tobacco from the Planters Protective Association, and had agreed to pay him for his services a commission of $1.50 a hogshead, and that he had performed the services contemplated by his contract, plaintiff, J. T. Myles, brought this action against the defendants to recover the sum of $1,800. The defendants interposed a general denial. A trial before a jury resulted in a verdict and judgment in favor of the defendants. Plaintiff appeals.

According to plaintiff's evidence, he was a tobacco grader of several years experience. In the spring of 1909 he entered into negotiations with W. H. Houseman whereby he agreed to inspect, locate, classify and examine into the value of a lot of lugs of the 1907 crop of tobacco, which had been carried over by the Planters Protective Association through the year 1908. As a re-

sult of these negotiations with Houseman plaintiff went to the various towns in Kentucky and Tennessee where the tobacco was stored. After having examined and inspected the tobacco he reported to Houseman the result of his investigations, and the prices at which the tobacco could be purchased. When his first trip was made Houseman had associated with him L. W. Key and D. D. Adams. When plaintiff made his report Key and Adams declined to enter into further negotiations looking to the purchase of the tobacco. During these preliminary negotiations Houseman agreed to pay plaintiff the usual broker's commission per hogshead in the event the contemplated purchase of the tobacco was made. After Key and Adams declined to purchase the tobacco Houseman stated that he would get the defendant, G. R. Allen interested. He then laid the matter before Allen, who asked if he made a full investigation. Plaintiff replied that he had only made a hurried trip. Allen told him to go ahead and see what he could do. Plaintiff also told Mr. Douthitt that he would do the work for $1.50 a hogshead. He then went a second time to Paducah, Guthrie and Clarksville, and examined each hogshead separately. After this second trip plaintiff reported to Houseman, Allen and Douthitt the result of his investigation and the prices at which the tobacco could be purchased. Houseman told him that they did not care to make as big a purchase as that without first seeing the samples. Plaintiff then agreed to go to Paducah with them the next morning. Instead of doing this the defendants went to Paducah that night and purchased the tobacco without examination. The purchase price of the tobocco was about $82,000. M. B. Nash, an experienced tobacco broker, said that it was an unusual thing for tobacco brokers to purchase tobacco without examining the samples. W. B. Blakemore, who made the sale to the defendants, said that the tobacco was purchased at the average price of $3.75 a hundred pounds. The purchase was made at night without any examination of the tobacco. He quoted Myles the terms upon which the tobacco could be purchased, and the defendants afterwards purchased upon the same terms.

For defendants Douthitt testified that he got his information in regard to the tobacco in question from a man by the name of Stephenson, a local agent in Mayfield.

He then got Harris to go in with him on the deal. On the way to the train they met Allen and Houseman, who also agreed to go in. The reason they made no examination of the tobacco was that they knew the character of the tobacco in Mayfield, and also knew that the tobacco elsewhere was superior in character to that at Mayfield. They also knew that the quoted prices were very low. Harris, Allen and Houseman all corroborated the statement of Douthitt. Douthitt and Allen denied that they ever had any conversation with Myles in regard to the tobacco. They also denied that they ever authorized or employed him to examine the tobacco for them. On cross-examination plaintiff admitted that he had never spoken to Harris about it. Houseman testified that Myles first approached him in regard to the purchase of the tobacco, but that he never agreed to pay him any commission. Key and Adams declined to go in on it. He also declined to go in on it. Defendants also showed that plaintiff attempted to get others interested in the sale of the tobacco. While he might have spoken to Mr. Allen about the purchase of the tobacco before the evening he went to Paducah, he never agreed to go in on the purchase until that evening.

While there are certain circumstances in the case which tend to confirm plaintiff's version of the transaction, yet in view of the emphatic denial of all the defendants, we cannot say that the finding of the jury is flagrantly against the evidence. The trial court gave a number of instructions. While perhaps subject to verbal criticism, we conclude that on the whole they fairly presented to the jury the law of the case.

Judgment affirmed.